471 So.2d 188 (1985)
AERONAUTICS AND ASTRONAUTICS SERVICES, Gesellschaft Fuer Luftfahrtgeraet Gmbh, a/K/a Aeronautics and Astronautics Services Gesellschaft Fuer Luftfahrt Gmbh, a German Corporation and Aeronautics and Astronautics Services, Inc., a Panamanian Corporation, Appellants,
v.
FIRST PALM BEACH INTERNATIONAL BANK, Appellee.
No. 84-1997.
District Court of Appeal of Florida, Third District.
June 18, 1985.
*189 Spencer, Dunn, Bernstein, Seemann & Klein and Andrew S. Berman, Miami, for appellants.
Mark V. Silverio, Miami, for appellee.
Before HENDRY, BASKIN and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
Appellant Aeronautics and Astronautics Services (AAS) challenges the entry of a final summary judgment in favor of appellee First Palm Beach International Bank in an interpleader/declaratory judgment action brought by Chase Manhattan Bank, N.A. as the stakeholder. For reasons more fully developed below, we reverse the final summary judgment and remand to the trial court for further proceedings.
Briefly stated, the facts are as follows. In November, 1982, Aerolineas Territoriales de Colombia (Aerotal) and First Palm Beach Bank entered into a revolving line of credit agreement in which, as security for a line of credit of up to $1,000,000, Aerotal pledged 80 percent of accounts receivable generated from sales to cargo agents, travel agents, and intercompany sales. A security agreement executed a few days later gave First Palm Beach Bank a security interest in 1. all accounts, contract rights, and inventory then owned or after acquired by Aerotal and 2. all proceeds from these accounts and contract rights. In December, First Palm Beach Bank filed a UCC-1 financing statement with the Secretary of State specifically describing the accounts as "accounts receivable generated from sales to cargo agents, travel agents, and intercompany sales". It did not specify proceeds. In June, 1983, Aerotal defaulted on its payments of principal and interest due to First Palm Beach Bank.
On September 27, 1983, Mr. Angelo Avvento, Administrative Officer and Customer Service Manager of the Aerospace Division at Chase Manhattan Bank received a telephone call from AAS concerning Chase Manhattan's procedures governing the handling of a $50,000 check from Aerotal to AAS, drawn on Aerotal's account at Chase Manhattan, which was post-dated to September 30. The check represented partial payment of Aerotal's debts to AAS in connection with certain aircraft leases. AAS was advised to hold the check until the 30th and then either deposit it or present it for certification. Two days later, Mr. Avvento received a telephone call from First Palm Beach Bank's attorney stating that because of Aerotal's default, the bank was exercising its rights to the proceeds of the accounts receivable as provided by the various agreements. Copies of the documents were express-mailed to Mr. Avvento.
On September 30, the $50,000 check was presented by AAS for certification. At the same time, Mr. Avvento was inquiring whether any checks from Aerotal had been presented for certification. Mr. Avvento took the check, which the teller had started to certify, to Chase Manhattan's legal department for instructions. The final result was that the check was returned to AAS with the certification cancelled and all funds in the Aerotal account were placed in a "suspense" account at Chase Manhattan until the conflicting claims of First Palm Beach Bank and AAS could be resolved. AAS then deposited the check in its own account and the check was, of course, later returned for insufficient funds. Chase Manhattan filed this declaratory judgment suit to determine which party should receive the funds.
We can state at the outset that certain facts are undisputed. First, Aerotal's accounts receivable were the collateral for the line of credit extended by appellee First Palm Beach Bank. Second, First Palm Beach Bank had a perfected security interest by virtue of the financing statement filed with the State of Florida in the accounts receivable generated from sales to cargo and travel agents and from intercompany sales. §§ 679.302; 679.303, Fla. Stat. (1981). First Palm Beach Bank had an unperfected security interest in all remaining *190 accounts receivable, contract rights, inventory, and the proceeds therefrom by virtue of the signed security agreement. §§ 679.201; 679.203, Fla. Stat. (1981). AAS was an unsecured creditor.
Ordinarily, the undisputed facts would be dispositive of the case and the secured party, First Palm Beach Bank, would have priority over the unsecured creditor. § 679.312, Fla. Stat. (1981). But there are two factors present in this case which could change the result: 1. this action involves proceeds; that is, it involves the product of the secured inchoate rights to payment which have matured, through performance, into actual payments, and 2. it involves a security agreement which is far broader than the financing statement.
First, we briefly address the parties' dispute concerning the status of the clearing house account at Chase Manhattan Bank. First Palm Beach Bank argues that the account was itself an account receivable secured by the security agreement. This argument shifts the focus from the proceeds to the account itself. This argument, while adroit, is patently wrong. As the official comments make clear, Article 9 of the Uniform Commercial Code covers only traditional accounts receivable: "`Account' is defined as a right to payment for goods sold or leased or services rendered; the ordinary commercial account receivable." U.C.C. § 9-106, official comments (1978). Certainly, Chase Manhattan Bank had no obligation to pay Aerotal for anything. Its sole responsibility was to receive funds and to disburse them accurately according to Aerotal's directions (checks). Furthermore, First Palm Beach Bank's financing statement indicates that it contemplated perfecting a security interest only in ordinary commercial accounts receivable. At the same time, however, we also reject AAS's argument that the account at Chase Manhattan Bank was a "demand deposit" account and thus excluded from Article 9's purview. While it is true that the account in question is a form of demand deposit account, section 9-104(l) provides for coverage of deposit accounts when proceeds are involved. U.C.C. § 9-104(l) (1978). Since our primary focus in this case is on the source of the cash proceeds sitting in Aerotal's deposit account, the account is clearly covered by Article 9.
Thus, the crucial question to be resolved is: under what conditions does a creditor who holds a perfected security interest in accounts receivable also hold a perfected security interest in cash proceeds accruing from the debtor's collection of the accounts receivable?
Section 9-306(3) (§ 679.306(3), Fla. Stat. [1981]) resolves this question. In this case, it is undisputed that while First Palm Beach Bank had perfected vis-a-vis the accounts receivable, it had not filed a financing statement perfecting the cash proceeds within ten days of the proceeds' receipt by the debtor (Aerotal). Thus, the requirements of section 9-306(3)(c) have not been met. First Palm Beach Bank argues that 9-306(3)(a) governs. But by its terms,[1] it seems clear that this provision addresses noncash proceeds only. Any other construction would invite a circuity of reference with section 9-304 ("... A security interest in money or instruments ... can be perfected only by the secured party's taking possession, except as provided in subsections ... (2) and (3) of section 9-306 on proceeds"). Therefore, section 9-306(3)(b) becomes the pertinent provision: the creditor's right to proceeds is perfected if "a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds".
In the case sub judice, First Palm Beach Bank had a perfected security interest in three specific accounts receivable. Under 9-306(3)(b) then, the bank would also have a perfected security interest in the cash proceeds collected by Aerotal from those specific accounts receivable. Therefore, *191 we remand this cause to the trial court for a determination of the source of the cash proceeds now being held by Chase Manhattan Bank.[2] First Palm Beach Bank will have priority over AAS in all cash proceeds collected from the accounts receivable covered by the financing statement.
If, in the course of tracing the source of the cash proceeds it is discovered that there are cash proceeds from accounts receivable covered by the security agreement and not by the financing statement,[3] the trial court should make a determination as to whether section 9-301(1)(d) (§ 679.301(1)(d), Fla. Stat. [1981]), read in conjunction with section 9-306(2), would change the priority structure so that AAS would have priority, as to those proceeds, over First Palm Beach Bank. We need not, at this time, reach the question of whether a creditor who provides goods or services for value, without notice of the security interest, becomes in fact, by providing these goods or services, a "purchaser" of the proceeds of the accounts receivable.
Finally, we note that the whole purpose of the filing provisions of Article 9 is to give notice to subsequent creditors that there exists a security interest in certain assets of the debtor. American Restaurant Supply Co. v. Wilson, 371 So.2d 489 (Fla. 1st DCA 1979). We leave to the trial court the decision on whether the filed financing statement was sufficient to apprise AAS of First Palm Beach Bank's extensive security interest in all of Aerotal's assets.
Because we find that there are genuine issues of material fact still to be resolved, we reverse the final summary judgment entered herein and remand to the trial court for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] First Palm Beach Bank relied solely on the first half of the subsection instead of the entire provision, which must be read in its entirety because of the connecting "and".
[2] The record reflects that this tracing can be done easily.
[3] This would happen when, for example, an Aerotal agent sold a ticket for an Aerotal flight. The resulting proceeds would not be covered by the financing statement but would be covered by the security agreement.